ER

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

SUFFOLK, ss                                   SUPERIOR COURT DEPARTMENT
                                              CIVIL ACTION NO.

_____
                                          )
MICHAEL JOYCE,                            )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )
                                          )
SURVEYING AND MAPPING, LLC,               )
                                          )
        Defendant.                        )
_____   )

## COMPLAINT AND JURY DEMAND

Plaintiff Michael Joyce ("Joyce"), by way of complaint against defendant Surveying and

Mapping, LLC ("SAM"), hereby alleges as follows:

### PARTIES

1.      Mr. Joyce is an individual residing at 216 Kates Path Village, Yarmouth Port,

Massachusetts 02675.

2.      Defendant Surveying and Mapping, LLC is a Texas limited liability company with

a principal place of business located at 4801 Southwest Parkway, Building 2, Suite 100, Austin,

Texas 78735.

### JURISDICTION AND VENUE

3.      Jurisdiction is proper because SAM has sufficient contacts with the Commonwealth

of Massachusetts and the amount in controversy exceeds $50,000.

4.      Venue is proper because SAM conducts business throughout the Commonwealth,

including in Suffolk County.

**FACTS**

5.      Mr. Joyce is a professional with engineering, real estate development, construction and project management experience who founded Turning Mill Consultants, Inc. after working in various aspects of the commercial and residential design and development industries for approximately two (2) decades.

6.      In July 2023, Mr. Joyce began consulting for SAM through his business, Turning Mill Consultants, Inc.

7.      At the time, SAM had approximately 1,600 employees with approximately 50 offices across the United States, but it did not have a presence in the Northeast.

8.      Approximately six (6) months after beginning his consulting arrangement, SAM began aggressively recruiting Mr. Joyce for full-time employment and to assume the role of Director of Business Development in the Electric Power Division for the Mid-Atlantic and the Northeast regions.

9.      On February 21, 2024, Mr. Joyce met with Jason Caskey, the Director of the East Region Electric Market Lead, and Kyle Curry, Vice President, to discuss his proposed employment arrangement, during which conversation Mr. Joyce was promised, among other things: (1) a performance review in six (6) months; (2) a performance review at the end of the 2024 calendar year; (3) an annual $50,000 bonus; (4) opportunity for advancement; (5) a 10% salary increase pending a favorable employee review; and (6) a flexible schedule and guaranteed job security until he retired in approximately ten (10) years.

10.    On March 18, 2024, in reliance on SAM's promises, Mr. Joyce became employed as the Director of Business Development in the Electric Power Division for the Mid-Atlantic and Northeast regions, reporting to Mr. Caskey.

11.    In reliance on SAM's promises, Mr. Joyce ceased Turning Mill Consultants, Inc.'s business operations.

12.    As the Director of Business Development, Mr. Joyce earned an annual salary of $200,000.00, plus benefits.

13.    Based on information and belief, Mr. Caskey is in his mid-to-late forties (40's).

14.    During Mr. Joyce's SAM employment, his supervisor, Mr. Caskey, stated that he was like the other "old guy" in his department, Tom Moorer, that he and Mr. Moorer would be with SAM until they wanted to retire, and further stated that "we just need you to use your contacts/connections to grow the Northeast."

15.    During this time, SAM was in the process of acquiring a Long Island-based company, GdB Geospatial ("GdB"), to support Mr. Joyce's efforts in bringing in new clients and work, and to grow the company's presence in the Northeast region.  Mr. Joyce spent a lot of his time assisting with GdB's onboarding efforts, and further assisting its management to get them accustomed with SAM's means and methods.  During this process, Mr. Caskey commented on how Mr. Joyce was the oldest person in the room on multiple occasions.

16.    In or about March or April of 2024, SAM hired a new business development person for the Mid-Atlantic region, effectively stripping Mr. Joyce of his responsibilities for the region. Nonetheless, Mr. Joyce continued to operate as the Director of Business Development for the Northeast, and, at Mr. Caskey's direction, he continued to assist the Mid-Atlantic region and began conducting business development work for other departments, including the Renewables, Gas and

3

GIS departments, which were not part of his scope. In the event Mr. Caskey could not attend a meeting, he would ask Mr. Joyce to attend on his behalf, whether via videoconference or in person. Clearly, Mr. Caskey had a lot of faith in Mr. Joyce's abilities.

17.    After SAM's acquisition of GdB, Mr. Caskey requested that Mr. Joyce mentor a former GdB employee, Jason Graff, as he got accustomed to SAM and got up to speed with his new role in the business development department.

18.    Based on information and belief, Mr. Graff is in his mid-forties and had no prior experience in business development.

19.    Mr. Graff began attending a lot of meetings in the Northeast and would accompany Mr. Joyce at conferences and other events. One time, Mr. Joyce mentioned to Mr. Caskey that Mr. Graff's performance was progressing and that they were starting to make inroads with new clients. In response, Mr. Caskey stated "remember he is not at polished as you old guys," or words to that effect.

20.    On January 24, 2025, Mr. Joyce received a message from Mr. Caskey asking him to attend a videoconference call, which he did. To Mr. Joyce's shock and surprise, SAM terminated his employment. In conversations with Mr. Caskey and Kevin Richardson (Senior Vice President), both gentlemen stated that Mr. Joyce was not terminated for performance reasons, but, rather, as a cost-cutting measure.

21.    Based on information and belief, Mr. Graff replaced Mr. Joyce and assumed his responsibilities.

22.    Mr. Joyce was sixty-one (61) years old at the time of his termination.

23.    At all times, Mr. Joyce performed the essential duties of his job at an acceptable level. In fact, during the course of his SAM employment, Mr. Joyce was instrumental in

4

onboarding large clients such as National Grid, Eversource, and RIE, and was responsible for re-engaging with other large clients such as PPL, MIT and Harvard.

24.     On July 24, 2025, Mr. Joyce filed a Complaint for Discrimination with the Massachusetts Commission Against Discrimination (the "MCAD").

25.     On February 11, 2026, Mr. Joyce filed a request with the MCAD seeking permission to file a private right of action in Superior Court.

## COUNT I
## VIOLATION OF G.L. c. 151B, § 4(1) – AGE DISCRIMINATION

26.     Mr. Joyce repeats and incorporates by reference the allegations in Paragraphs 1 through 25 as if the same were fully set forth at length herein.

27.     Mr. Joyce is a member of a protected class on the basis of his age (over 40).

28.     Mr. Joyce suffered an adverse job action by virtue of SAM's termination of his employment on January 24, 2025.

29.     SAM, through its agents and employees, subjected Mr. Joyce to discriminatory comments, differential treatment, and adverse employment action due to his age.

30.     SAM bore discriminatory animus against Mr. Joyce, and that animus was the reason for his termination as evidenced by, *inter alia*: Mr. Caskey's ageist remarks, SAM's termination of Mr. Joyce, a sixty-one (61) year old man, and the replacement of Mr. Joyce with a much younger, less experienced colleague.

31.     These actions constitute violations of G.L. c. 151B, § 4(1).

32.     As a direct and proximate result of these violations, Mr. Joyce has suffered damages in an amount to be determined at trial, including attorneys' fees and costs.

## COUNT II
## VIOLATION OF G.L. c. 149, § 148 – FAILURE TO PAY WAGES

5

33.     Mr. Joyce repeats and incorporates by reference the allegations in Paragraphs 1 through 32 as if the same were fully set forth at length herein.

34.     On January 24, 2025, SAM terminated Mr. Joyce's employment.

35.     SAM did not pay Mr. Joyce his duly earned wages or accrued vacation time on the date of his termination in violation of the Massachusetts Wage Act.

36.     As a direct and proximate result of this statutory violation, Mr. Joyce has suffered damages in an amount to be determined at trial, including treble damage, attorneys' fees and costs.

## COUNT III
## PROMISSORY ESTOPPEL

37.     Mr. Joyce repeats and incorporates by reference the allegations in Paragraphs 1 through 36 as if the same were fully set forth at length herein.

38.     On February 21, 2024, prior to accepting employment with SAM, Mr. Joyce met with SAM representatives, Jason Caskey, the Director of the East Region Electric Market Lead, and Kyle Curry, Vice President, to discuss his proposed employment arrangement, during which conversation Mr. Joyce was promised, among other things: (1) a performance review in six (6) months; (2) a performance review at the end of the 2024 calendar year; (3) an annual $50,000 bonus; (4) opportunity for advancement; (5) a 10% salary increase pending a favorable employee review; and (6) a flexible schedule and guaranteed job security until he retired in approximately ten (10) years.

39.     Based on the foregoing promises, SAM should have reasonably expected to induce Mr. Joyce to take up employment at the company and cease his consulting firm's operations.

40.     Mr. Joyce was reasonable in relying on SAM's promises and relied on them to his detriment in taking up employment at SAM and ceasing his consulting firm's operations.

6

41.     As a direct and proximate result of SAM's conduct, Mr. Joyce has suffered damages in an amount to be determined at trial.

## PRAYERS FOR RELIEF

**WHEREFORE**, Mr. Joyce respectfully requests that this Honorable Court:

i.     Enter judgment in favor of Mr. Joyce on all Counts of the Complaint and award damages in an to be determined at trial, including, but not limited to, compensatory damages, emotional distress damages, punitive damages, double damages, treble damages, and liquidated damages, together with interest, costs, expenses and attorneys' fees; and

ii.    Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Mr. Joyce demands a trial by jury on all claims so triable.

Dated: April 15, 2026                    Respectfully submitted,

                                         **MICHAEL JOYCE,**
                                         By his attorney,


                                         */s/ Michael A. Bednarz*
                                         Michael A. Bednarz (BBO #689047)
                                         **BERLUTI MCLAUGHLIN & KUTCHIN LLP**
                                         44 School Street, 9th Floor
                                         Boston, MA 02108
                                         T: (617) 557-3030
                                         F: (617) 557-2939
                                         mbednarz@bmklegal.com

7

| Summons | CIVIL DOCKET NO.<br>2684CV01116 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME: | | John E. Powers III    Clerk of Courts<br>Suffolk    County |
|---|---|---|
| Michael Joyce    **Plaintiff(s)**<br>vs.<br><br>Surveying and Mapping, LLC.    **Defendant(s)** | | COURT NAME & ADDRESS:<br>Suffolk Superior Civil Court<br>Three Pemberton Square<br>Boston, MA. 02108 |

THIS SUMMONS IS DIRECTED TO Surveying and Mapping, LLC.    (Defendant's name)

You are being sued. The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the Suffolk Superior    Court.
**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**
If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. If you need more time to respond, you may request an extension of time in writing from the Court.

**2. How to Respond.**
To respond to this lawsuit, you must file a written response with the Court <u>and</u> mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, Suffolk Superior    Court
3 Pemberton Square, Boston, MA 02108    (address), by mail, in person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal, <u>AND</u>

b) Delivering or mailing a copy of your response to the Plaintiff's attorney/Plaintiff at the following address:
Michael A. Bednarz Esq. of Berluti McLaughlin & Kutchin LLP, 44 School Street, 9th Floor Boston, MA 02108

**3. What to Include in Your Response.**
An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Court no more than 10 days after sending your Answer.

3. (cont.) Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Rule 12 of the Massachusetts Rules of Civil Procedure. If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. Required Information on All Filings.

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. ___Michael D. Ricciuti___ , Chief Justice on _____ , 20___ . (Seal)

Clerk _____

Note: The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ , I served a copy of this Summons, together with a copy of the Complaint in this action, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

_____

_____

_____

Dated: _____                    Signature: _____

N.B.    TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date:

rev. 1/2023